MEGEE v. EL PATIO
2023 OK 14
Case Number: 119449
Decided: 02/14/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 14, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

NANCY CAROL MEGEE, as Personal Representative of and on behalf of Estate of David Anthony MeGee, Plaintiff/Appellant,
v.
EL PATIO, LLC, an Oklahoma Limited Liability Company; and DYLAN SCOTT WELCH, an individual, Defendants/Appellees.
ON APPEAL FROM THE DISTRICT COURT OF CUSTER COUNTY,
STATE OF OKLAHOMA
HONORABLE JILL C. WEEDON, DISTRICT JUDGE
¶0 Plaintiff/Appellant Nancy Carol MeGee, as Personal Representative of and on behalf of the Estate of David Anthony MeGee, brought a wrongful death action against Defendants/Appellees El Patio, LLC and Dylan Scott Welch. Personal Representative alleges that Welch and other employees of El Patio over-served alcoholic beverages to David Anthony MeGee and then bet him $200 to drive from Weatherford, Oklahoma, to Oklahoma City. MeGee died in a motor vehicle accident on his way to Oklahoma City. The trial court granted El Patio and Welch's motion to dismiss for failure to state a claim. Personal Representative appealed. We reaffirm our holding in Ohio Casualty Insurance Co. v. Todd, , , that a voluntarily intoxicated adult does not have a cause of action against a commercial vendor for personal injuries or death resulting from his own intoxication. We also hold that, regardless of the sale of alcohol, an intoxicated adult who accepts a bet to drive a motor vehicle and is injured as a result of his own intoxication does not have a cause of action against the bettor.
ORDER OF THE DISTRICT COURT IS AFFIRMED.
Clayton B. Bruner, Weatherford, Oklahoma, for Plaintiff/Appellant.
Richard M. Healy, Lytle Soulé & Felty, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.
KANE, C.J.:
¶1 There are two issues on appeal. First, should dram shop liability be extended to create a cause of action for a voluntarily intoxicated adult patron who is injured or dies as a result of his own intoxication? We reaffirm our holding in Ohio Casualty Insurance Co. v. Todd, , , that the commercial vendor is not liable to the voluntarily intoxicated adult patron who injures himself. Second, does a voluntarily intoxicated adult who accepts a bet to drive a motor vehicle and injures himself as a result of his own intoxication have a cause of action against the bettor? We recognize no such cause of action.
FACTS AND PROCEDURAL HISTORY
¶2 David Anthony MeGee was killed in a motor vehicle accident on January 19, 2019. Prior to getting behind the wheel, MeGee had been drinking alcohol at the El Patio restaurant in Weatherford, Oklahoma.
¶3 On January 19, 2021, Plaintiff/Appellant Nancy Carol MeGee, as Personal Representative of and on behalf of the Estate of David Anthony MeGee, filed a wrongful death action against Defendants/Appellees El Patio, LLC and Dylan Scott Welch, an employee of El Patio. The petition alleges that Welch intentionally and negligently over-served MeGee resulting in his death. It is alleged that Welch and other El Patio employees served MeGee twelve beers and five shots of tequila over the course of seven hours and then allowed him to drive. The petition further alleges that several servers bet MeGee $200.00 that he would not meet them at a bar in Oklahoma City later that night. Welch and the servers knew MeGee was leaving El Patio to drive to Oklahoma City to collect on the bet. MeGee reached speeds of 97 mph on his way and collided with the rear end of a tractor-trailer on I-40 near El Reno, Oklahoma. He was ejected from the vehicle and pronounced dead at the scene.
¶4 El Patio and Welch filed a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to (B)(6). El Patio and Welch argued Oklahoma law is clear that a licensed vendor of alcohol is not liable for injuries sustained by an intoxicated adult as a result of his own voluntary consumption of alcohol and that "negligent betting" is not a cognizable theory of liability. Personal Representative responded that an exception to the current law on first-party dram shop liability should be made under the egregious facts of the case and that betting an intoxicated person to drive is actionable. The trial court granted El Patio and Welch's motion to dismiss by journal entry filed on March 22, 2021. Personal Representative appealed. This Court retained the appeal on its own motion.
STANDARD OF REVIEW
¶5 A district court's dismissal of an action is reviewed de novo. See Kirby v. Jean's Plumbing Heat & Air, , ¶ 5, , 23. The purpose of a motion to dismiss is to test the law that governs the claim, not the facts. Id. ¶ 5, at 24. A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it appears without doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. Id. Thus, the Court must take as true all of the allegations in the challenged pleading together with all reasonable inferences that can be drawn from them. Id. Dismissal is appropriate only when there is no cognizable legal theory to support the claim or there are insufficient facts under a cognizable legal theory. Id.
ANALYSIS
¶6 Personal Representative is advancing two theories of liability based on negligence--selling alcohol to a noticeably intoxicated adult and betting an intoxicated person to drive. The framework for determining whether she has stated a claim for negligence is the same for both. To maintain a cause of action for negligence, three elements must be established: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. Smith v. City of Stillwater, , ¶ 22, , 1200.
I. Liability Based on Serving Alcoholic Beverages to a Noticeably Intoxicated Adult
¶7 The common law rule was that a liquor vendor is not civilly liable for injuries to a third party that are caused by the acts of an intoxicated patron. This Court first recognized dram shop liability in Brigance v. Velvet Dove Restaurant, Inc., , . We said that commercial vendors have a duty, imposed by both statute and common law principles, "to exercise reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party." Id. ¶ 18, at 304. Since Brigance, a third party injured by a drunk driver may state a cause of action against the commercial vendor that over-served the driver.
¶8 In Ohio Casualty v. Todd, we were asked to determine whether a Brigance action should be extended to a voluntarily intoxicated adult patron who injures himself. We held that a tavern has no liability to an intoxicated adult who voluntarily consumes alcoholic beverages in excess and is injured as a result of his own intoxication. See Ohio Cas., , ¶ 20, 813 P.2d at 512. In reaching this conclusion, we explained that the commercial vendor's statutory and common law duty not to serve intoxicated persons is to protect innocent third parties, not to protect the voluntarily intoxicated adult from injuring himself.
¶9 We began Ohio Casualty by recognizing the tavern owner's statutory duty not to serve alcoholic beverages to an intoxicated adult and then examined whether violation of the statute amounted to negligence per se. See id. ¶¶ 9-11, at 510. The Court explained that the following elements must be established before the violation of a statute is negligence per se: (1) the injury must have been caused by the violation; (2) the injury must be of a type intended to be prevented by the statute; and (3) the injured party must be a member of the class intended to be protected by the statute. Id. ¶ 9, at 510. This Court found that the intoxicated driver was not a member of the class the statute was intended to protect. Id. ¶¶ 10-11, at 510. The Court reiterated what it said in Brigance: "[T]he purpose behind Section 537(A)(2) was to protect innocent third parties who were injured by intoxicated persons." Id. ¶ 10, at 510. We concluded:
We find nothing in Section 537(A)(2), or in any of the statutes regulating the sale of alcohol, which indicate that the legislature intended to protect the intoxicated adult who, by his own actions, causes injury to himself. Instead, it appears that the legislature intended to protect the "unsuspecting public" - in effect all of the populace except the willing imbiber. Thus, a violation of Section 537(A)(2) does not amount to negligence per se under the facts of this case.
Id. ¶ 11, at 510 (citations omitted). The Court also found Article 28, § 5 of the Oklahoma Constitution did not create a civil remedy in tort for the voluntarily intoxicated adult against the tavern owner. See id. n. 1, at 510.
¶10 The Court then turned to whether the tavern owner has a common law duty to an intoxicated adult patron who injures himself. Id. ¶¶ 12-19, at 510-12. We found no such common law duty. The Court discussed the concept of duty and liability as matters of public policy "subject to the changing attitudes and needs of society." Id. ¶ 13, at 511 (citing Brigance, , ¶ 12, 725 P.2d at 303). When Ohio Casualty was decided in 1991, the Court identified no public policy that demanded the extension of dram shop liability to the voluntarily intoxicated adult. Id. ¶ 18, at 512. Rather, societal considerations aimed at deterring drunk driving called for personal accountability:
Here, the question is simply whether the intoxicated adult must bear the responsibility for his own injury which occurred due to his voluntary consumption of an excessive amount of alcohol. In the absence of harm to a third party, the act of serving an alcoholic beverage to an intoxicated adult customer and allowing the customer to exit the establishment does not constitute a breach of duty which is actionable in common law negligence. The public policy of protecting the innocent from the intoxicated would not be furthered by such an extension of Brigance. This holding does not ignore the conduct of the tavern owner, as the opinion concurring in part and dissenting in part fears. If a third party is injured, the rule of Brigance provides a cause of action against the tavern owner as well as the driver. Furthermore, the tavern owner who disregards the condition of his customers does so at the risk of criminal prosecution as well as forfeiture of his liquor license.
Id. ¶ 19, at 512 (emphasis added).
¶11 This appeal presents the same question addressed in Ohio Casualty. We decline Personal Representative's invitation to deviate from our holding in Ohio Casualty. Rather, we reaffirm this Court's precedent. A voluntarily intoxicated adult patron who is injured as a result of his own intoxication cannot maintain a civil action against the commercial vendor. Like the Court in Ohio Casualty, we are cognizant that when a court creates a cause of action based on public policy, as we did in Brigance, it "has a burden to responsibly chart the boundaries beyond which the new cause of action does not serve the public, and should not be the law." Id. ¶ 18, at 512. Attitudes about drinking and driving and the needs of society have not changed over the last 32 years in such a way that dram shop liability should be extended to the voluntarily intoxicated adult. To the contrary, we heed to the Ohio Casualty Court's warning that if we "were to create a cause of action against the tavern owner, the inebriate could be rewarded for his own immoderation. Such was not the intent of Brigance, nor will we allow such a reward." Id. ¶ 15, at 511.
II. Liability Based on Betting an Intoxicated Adult to Drive
¶12 Personal Representative presses a second theory of liability based on allegations that El Patio employees bet or incentivized MeGee to drive to Oklahoma City in an intoxicated state. Personal Representative asserts that MeGee was financially destitute and "$200.00 was an immense amount of money" to him. She emphasizes that the negligent betting theory of liability is separate from dram shop liability. Her negligent betting claim does not rely on MeGee being over-served at El Patio. Rather, she contends there is a common law duty not to bet a drunk person to drive.
¶13 As always, we begin with the existence of a duty. Whether a duty exists is a question of law. See Smith, , ¶ 22, 328 P.3d at 1200. If the defendant does not have a duty to protect the plaintiff from injury, there can be no set of facts available to create liability for negligence as a matter of law. See id. While negligent betting and over-serving are separate theories of liability, the duty inquiry is the same: Did the El Patio employees have a duty to protect MeGee from injuring himself?
¶14 Again, our analysis hinges on to whom the duty is owed, i.e., whether there is a duty to protect the plaintiff from injury. There may be a duty not to bet an intoxicated person to drive, but that duty is owed to innocent third parties, not the voluntarily intoxicated adult. MeGee was not an innocent third party. Rather, he was a voluntarily intoxicated adult who drove a motor vehicle and, tragically, died as a result of his own intoxication. El Patio employees may have had a duty not to bet MeGee to drive to protect third parties from injuries caused by MeGee, but they did not have a duty to protect MeGee from injuring himself.
¶15 We hold that a voluntarily intoxicated adult who accepts a bet to drive a motor vehicle and is injured or dies as a result of his own intoxication does not have a cause of action against the bettor. A voluntarily intoxicated adult is responsible for his condition and must be accountable for his own injuries. Allowing an intoxicated adult to be rewarded for his decision to drive does not deter drunk driving or further the public policy of protecting the innocent from the intoxicated. Echoing what this Court said in Ohio Casualty, in the absence of harm to a third party, betting an intoxicated adult to drive does not constitute a breach of duty actionable in common law negligence. Our holding does not ignore the conduct of the bettor. If a third party is injured, there may be a cause of action against the bettor as well as the driver.
¶16 We do not recognize a common law duty to protect a voluntarily intoxicated adult from injuring himself. The facts alleged are egregious, but, without the existence of a duty, Personal Representative has failed to state a claim upon which relief may be granted. No cognizable legal theory supports Personal Representative's claims. The trial court properly dismissed the lawsuit.
CONCLUSION
¶17 It remains the law in Oklahoma that a voluntarily intoxicated adult who is injured as a result of his own intoxication does not have a cause of action against the commercial vendor that over-served him. A voluntarily intoxicated adult who accepts a bet to drive a motor vehicle and is injured or dies as a result of his own intoxication does not have a cause of action against the bettor.
ORDER OF THE DISTRICT COURT IS AFFIRMED.
CONCUR: Kane, C.J., Rowe, V.C.J. (by separate writing), Winchester and Kuehn, JJ. and Mitchell, S.J.
DISSENT: Kauger, Edmondson, Gurich (by separate writing) and Darby (by separate writing), JJ.
DISQUALIFIED: Combs, J.
FOOTNOTES
 Welch pleaded guilty to a misdemeanor for knowingly selling alcohol to an intoxicated person, in violation of , on February 18, 2020. See State v. Welch, No. CM-2019-00333, Custer Cty. Dist. Ct.
 See .
 See (A)(2); see also (G) (criminal penalty).
 At the time Brigance and Ohio Casualty were decided, (A)(2) provided: "No person shall . . . [s]ell, deliver or knowingly furnish alcoholic beverages to an intoxicated person or to any person who has been adjudged insane or mentally deficient . . . ." (A)(2); see also (G) (criminal penalty). Title 37 was later repealed by 2016 Okla. Sess. Laws, SB 383, c. 366, § 169 (eff. October 1, 2018), and replaced with Title 37A, which provides, in pertinent part:
Any person who shall knowingly sell, furnish or give alcoholic beverage to an insane, mentally deficient or intoxicated person shall be guilty of a misdemeanor for a first violation, and upon conviction shall be fined not more than Five Hundred Dollars ($500.00), or imprisoned in the county jail for not more than one (1) year, or by both such fine and imprisonment. 
.
 Article 28, § 5 of the Oklahoma Constitution provided: "It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to . . . [a] person who is intoxicated." Article 28 of the Oklahoma Constitution was repealed by Legislative Referendum 370, State Question 792, adopted at election held November 8, 2016. However, it was replaced with the same language in Article 28A, § 5: "It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to . . . [a] person who is intoxicated."
 A minor who voluntarily drinks to the point of intoxication and is injured as a result of his own intoxication may have a cause of action against a commercial vendor. See Busby v. Quail Creek Golf & Country Club, , ¶ 12, , 1331-32.
 Personal Representative does not contend a statutory duty exists, as there is no law prohibiting individuals from betting intoxicated persons to drive.
 We leave open the question of whether there is a common law duty not to bet an intoxicated minor to drive to protect the intoxicated minor from injuring himself.

ROWE, V.C.J., concurring:
¶1 I concur in the Court's judgment, affirming our decision in Ohio Casualty Insurance Co. v. Todd, , , that a commercial vendor is not liable to the voluntarily intoxicated adult patron who injures himself. I write separately to highlight my concern with the Court's creation of civil liability in Brigance v. Velvet Dove Restaurant, Inc., , .
¶2 The disregard for the life of the victim in this case rises to a level of inhumanity that shocks the conscience of the Court. Cases such as these tempt us to right a wrong and impose liability where none existed before. Yet, as callous as the actions of the employees were, we should not deviate from our principles of judicial restraint to expand civil liability to an area not heretofore recognized by the common law or statutory mandate.
¶3 At Oklahoma's statehood, the Legislature banned liquor and created a statutory dram shop cause of action. However, in 1959 the dram shop cause of action was repealed by the Alcohol Beverage Control Act and was never reenacted. As a result, the common law rule stood that a tavern owner who furnished alcoholic beverages to another was not civilly liable for a third person's injuries caused by the acts of an intoxicated patron.
¶4 Twenty-seven years later in Brigance, we held that in the interest of public policy, we should reject the common law doctrine of nonliability for tavern owners. In so holding, we created a civil cause of action for injured third parties against commercial vendors who furnish alcoholic beverages to a noticeably intoxicated person that causes an injury. To date, the civil liability created by Brigance has yet to be codified by the Legislature despite numerous cases applying such liability. ¶5 Absent statutory authority, it is not the job of the Court to impose civil liability where none existed before--such responsibility rests with the Legislature. "The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare the public policy of this state." Griffin v. Mullinix, , ¶ 18, , 179. See City of Bethany v. Pub. Emps. Rels. Bd. of State of Okla., , ¶27, , 612 ("In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state").
¶6 Although it is tempting to impose liability when the facts underlying this tragedy are so appalling, our decision today correctly recognizes that determining whether liability should be imposed is not vested in our branch of government.
FOOTNOTES
 "The principle of judicial restraint includes recognition of the inability and undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected legislature." Gladstone v. Bartlesville Indep. Sch. Dist. No. 30 (I-30), , , 451, n.53 (citing Ferguson v. Skrupa, 371 U.S. 726, 731-32 (1963)).
 1908 Okla. Sess. Laws 610. Section 21, in pertinent part, provides: "Every wife, child, parent, guardian, employer, or other person who shall be injured in person or property, or means of support by any intoxicated person or in consequence of intoxication of any person, shall have a right of action for all damages actually sustained, in his or her own name against any person, individual or corporate, who shall, by selling, bartering, giving away, or otherwise furnishing intoxicating liquors, contrary to the provisions of this Act have caused the intoxication of such person." 1908, ch. 69, art III § 21.
 1959 Okla. Sess. Laws 141, repealing .
 In Brigance v. Velvet Dove Restaurant, Inc., then Chief Justice Simms (joined by Vice Chief Justice Doolin and Justice Opala) noted that the Court's holding did not extend "to benefit a consumer driver's claim against the vendor." Brigance, , ¶ 1, (Simms, C.J., concurring).

Gurich, J., with whom Kauger, Edmondson, and Darby, JJ., join, dissenting:
¶1 The majority concludes that the mother of a driver of a one-car accident, who died after being overserved and encouraged to consume alcohol by the employees of El Patio Restaurant in Weatherford, Oklahoma, has no cause of action. I dissent from the majority opinion because neither the Oklahoma Constitution nor a state statute limits the liability of a person who sells or furnishes alcohol to an intoxicated person solely to injuries suffered by third-parties. Both the State Constitution and our statutes impose a broad duty to refrain from selling or furnishing alcohol to an intoxicated person. Thus, I would find our pronouncement in Ohio Casualty Insurance Co. v Todd, , , has no basis in law and should be overruled.
¶2 Article 28A, § 5 of the Oklahoma Constitution provides as follows:
Sales prohibited to certain persons--Penalties
A. It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to: 
1. A person under the age of twenty-one (21) years of age;
2. A person who has been adjudged insane or mentally deficient; or
3. A person who is intoxicated.
B. It shall be unlawful for any person under the age of twenty-one (21) years to misrepresent his or her age, for the purpose of obtaining the purchase of any alcoholic beverage.
C. The Legislature shall, by law, provide penalties for violations of the provisions of this section.
Oklahoma statutes also speak to the issue of serving a person who is intoxicated. Title 37A has multiple sections that prohibit a person from selling or furnishing an alcoholic beverage to a person under the age of 21 or a person who is intoxicated. For example, provides in part:
A. No person shall:
1. Knowingly sell, deliver or furnish alcoholic beverages to any person under twenty-one (21) years of age;
2. Sell, deliver or knowingly furnish alcoholic beverages to an intoxicated person or to any person who has been adjudged insane or mentally deficient; 7A §6-101(A) (1), (2); Title (C).
¶3 Neither the Constitution nor the above-referenced statutory section specify who they are designed to protect -- i.e., the general public or the person being served. Instead, both create a legal duty for the seller of alcohol to refrain from selling/furnishing alcohol to an intoxicated individual. In Ohio Cas. Ins. Co. v Todd, , , this court answered a certified question from a federal court, concluding that a driver in a one-car accident who consumed alcohol by being served in a tavern was barred from bringing a civil action for his own injuries and damages. I believe this conclusion is directly contrary to the express duty created by the State Constitution. This was articulated by Justice Alma Wilson in her dissenting opinion:
A plain reading of this constitutional provision is that persons under the age of twenty-one years, persons adjudged mentally incompetent and persons intoxicated are to be protected by the liquor licensee. That is, the liquor licensee had a duty not to sell or furnish alcoholic beverages to persons in those three specified groups of persons.
Id. ¶ 3, 813 P.2d at 525. I agree with Justice Wilson, that "[a] reasonable intent to be gleaned from Article 28, § 5 is the protection of minor persons and adjudged mentally deficient persons and intoxicated persons." Id. ¶ 6, 813 P.2d at 525. The same logic applies to the above-referenced statutory section.
¶4 The majority uses the term "voluntary consumption" to negate the cause of action based on the overserving of a noticeably intoxicated person. It is as if this Court is applying the concept of contributory negligence, not comparative negligence. The negligence of the one consuming alcohol should be compared to the negligence of the seller/server.
¶5 There are several material issues that should be resolved by the fact finder, such as whether or not the overconsumption by the decedent was voluntary; whether the decedent was noticeably intoxicated; and whether the establishment continued to serve the decedent after he was noticeably intoxicated. Further, the actions of a server who sells or furnishes alcohol to a noticeably intoxicated person should be imputed to the establishment if the restaurant manager or supervisor had knowledge, encouraged the behavior, or failed to supervise, under a theory of respondeat superior. Fox v. Mize, , ,¶ 8. El Patio is in the business of selling alcohol, so it only makes sense that increasing sales of liquor will increase profits. Tips for servers/bartenders also increase as a customer's tab increases.
¶8 Under the facts of this case, the decedent was served seventeen alcoholic beverages by four different servers over seven hours. Eventually, employees of El Patio bet decedent $200.00 he could not drive from the restaurant location in Weatherford, Oklahoma, to a bar in Oklahoma City by a designated time. There are many reasons to reconsider our prior authority. Drunk drivers are a constant threat to the law-abiding users of our roads and highways. Encouraging noticeably intoxicated persons to drive by sellers of alcohol should be actionable. The trial court's order should be reversed, vacated and remanded to allow the case to proceed.
FOOTNOTES
 Added by Laws 2015, SJR 68, Section 1, State Question 792, Legislative Referendum 370, adopted at election held November 8, 2016. Article 28, § 5 was originally adopted in 1984 and repealed and replaced at the same time the voters adopted Article 28A § 5.
 23 O.S.2021, §§ 13-14.
 Even the defendants in this case, represented by the same counsel, ask the court to make a prospective ruling, should this court reconsider the Ohio Casualty case.

 DARBY, J., with whom Kauger, Edmondson, and Gurich, JJ., join dissenting:
¶1 Plaintiff alleges that the employees of Defendant served David Anthony Megee alcohol while Mr. Megee was obviously intoxicated, a crime, to which one employee has already entered a guilty plea and received a one-year sentence. One or more employees either bet $200.00, or agreed to pay Mr. Megee $200.00, if he would drive to meet them later that night in a bar approximately 70 miles away. The allegations are that Mr. Megee stumbled out of El Patio, got into his car, drove into the back of a tractor trailer, was ejected from his vehicle, was run over by a separate vehicle, and as a result Mr. Megee is dead, leaving behind a grieving family. When Plaintiff brought the cause of action, the trial court followed the existing law in Oklahoma as expressed in Ohio Casualty Insurance Company v. Todd, , , and dismissed for failure to state a claim.
¶2 Before the Court decided Ohio Casualty, in Brigance v. Velvet Dove Restaurant, Inc., , , we held that in the interest of public policy and other compelling reasons we should reject the common law doctrine of tavern owner nonliability in Oklahoma. We created a civil cause of action in instances where the commercial vendor sells or furnishes intoxicating beverages to an intoxicated customer thereby creating an unreasonable risk of harm to others who may be injured by the intoxicated driver's impaired ability to drive safely. In response, the Oklahoma Legislature took no action to codify or repeal "dramshop" liability.
¶3 Then, in 1991, this Court answered a certified question from the U.S. District Court for the Western District and held that "the tavern owner has no liability to the intoxicated adult who voluntarily consumes alcoholic beverages to excess and sustains injuries as a result of his intoxication." Ohio Casualty, , ¶ 20, 813 P.2d, at 512. In response, the Oklahoma Legislature has still taken no action to define the limits of potential dramshop liability in the intervening 31 years.
¶4 And now, the Court has the question of whether under any circumstances a licencee may be liable for injuries or death suffered by the intoxicated driver. We decided Velvet Dove and Ohio Casualty largely under the light of public policy. The reasoning so far has been that injured third parties are innocent and may recover, but the voluntarily intoxicated driver is not innocent and may not recover. In other words, it is the solitary fault of the intoxicated customer to drink to excess and drive and the tavern and its employees have no concern for their potential liability in their role in the death or injury to the customer. But, "a third party who was injured in an intoxicated driver's auto accident may . . . state a cause of action against the restaurant that served liquor to the driver." Ohio Casualty, , ¶ 6, 813 P.2d, at 509.
¶5 In Ohio Casualty this Court refused to extend potential liability for serving alcohol to an intoxicated customer and held that:
In the absence of harm to a third party, the act of serving an alcoholic beverage to an intoxicated adult customer and allowing the customer to exit the establishment does not constitute a breach of duty which is actionable in common law negligence.
Ohio Casualty, , ¶ 19, 813 P.2d, at 512. In other words, if a single car accident occurs, the over-served intoxicated driver does not have a cause of action against the business entity that over-served him.
¶6 The brief statement regarding the claims in Ohio Casualty do not include an allegation that the servers also contributed to the person's decision to drive by offering a monetary payoff. I doubt research will produce a case anywhere in the United States with a similar fact pattern. Mr. Megee accepted the challenge--but lost the bet and his life. And under the existing law in Oklahoma, Mr. Megee and his surviving family are literally out of luck.
¶7 I agree that in most circumstances the existing case law expressed in Ohio Casualty should be followed. I disagree, however, with the decision to prevent Plaintiff from pursuing this cause of action which alleges near unbelievable facts which demonstrate reckless conduct by Defendants in total disregard of Mr. Megee's life and the life of third parties.
¶8 The Oklahoma Legislature has not addressed the question of whether a cause of action lies against a licensee for injuries resulting from its employees serving alcohol to an intoxicated person. Regarding public policy, our goal as a decent citizenry is to prevent or at least reduce drunk driving because people every day are injured or killed as a result. If Oklahoma businesses know they may be held liable if the over-served drunk driver may also have a cause of action if injured or killed, what would change? The tavern would most certainly be more attentive to the problems associated with serving intoxicated patrons, would serve fewer intoxicated persons, and fewer drunk drivers would crash and be injured or killed--plus, fewer innocent third parties who are somebody's grandchild, spouse, or friend would be injured or killed.
¶9 To not protect the intoxicated driver from harm by allowing for potential liability upon the tavern cheapens that person's life. To just say it was their choice, they should suffer the consequences alone, don't burden the tavern with looking out for their safety is, in my opinion, off the mark.
¶10 Serving intoxicated patrons is a crime in Oklahoma, and prosecution for that crime is not dependent upon a resulting death or injury to anybody. Why then is the tavern's civil liability dependent upon who gets hurt as a result of their wrongdoing? Possibly that is what the people of Oklahoma want; maybe not. The answer is not an easy one. The Oklahoma Legislature may want to set the parameters of the tavern's liability. Personally, I find former Justice Opala's suggestions to be the most logical and legally sound.
While I join in the court's refusal today to disturb this principle to benefit the uncoerced sui juris consumer, I would extend Brigance to allow actionable claims for only three narrowly defined classes of intoxicated consumer--all comprised of persons clearly unable to exercise free will: (1) those sui juris claimants whose will was overborne by duress, coercion or other wilful or grossly reckless misconduct, (2) those who were induced into imbibing by false misrepresentations that the potion was nonalcoholic or harmless and (3) those under legal disability--minors and mentally disabled--i.e., persons whose will the law recognizes as impaired by definition.
Ohio Casualty, , ¶ 4, 813 P.2d, 514 (Opala, C.J, concurring).
¶11 I respectfully dissent. I would remand with instructions to vacate the order sustaining the motion to dismiss.
FOOTNOTES
 Motions to dismiss are generally viewed with disfavor. The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. When considering a defendant's quest for dismissal, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them. A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be entitled. If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied. A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory.